CHARLES R. JONES, Judge.
hThe appellant, Gayle Dellinger, seeks review of a district court judgment dismissing her claim as the mandatary of the defendant. We affirm.
On November 9, 2007, Ms. Dellinger attended the Opera Charity Ball in New Orleans where she alleged that she was sought out by the Appellee, Mr. Patrick Van Hoorebeek, who requested that she bid, as his mandatary, on a Public Belt sponsored railcar party package for him, since he was an auctioneer and could not bid. She claims that following the request, she bid on the auction lot allegedly under the authorized expenditure of Mr. Van Hoorebeek and paid with her own funds, specifically with her American Express card. Thereafter, she arranged for the delivery of the merchandise and all indicia of ownership to Mr. Van Hoorebeek.
Upon completion of her mandate, Ms. Dellinger made an accounting to Mr. Van Hoorebeek and requested payment of her expenditures and expenses; made numerous subsequent written demands for payment; and .placed Mr. Van Hoorebeek in default. Eventually, Ms. Dellinger filed suit on August 6, 2009, |2seeking her expenses, interest, as well as attorney fees and costs. She maintained that Mr. Van Hoorebeek intended to permanently convert her funds and other property.
After discovery, a bench trial commenced in the district court on July 28, 2010,[1] after which, the district court dismissed the claim of Ms. Dellinger with oral reasons. The instant appeal followed, and Ms. Dellinger raises the following assignments of error on appeal:
1. The district court erred in refusing to permit the record of Request for Admissions served on Mr. Hoore-beek, and did the district court commit reversible error in failing to give conclusive evidentiary effect to the admission as mandated by La. C.C.P. art. 1466-1468.
2. The district court clearly erred and committed reversible error in ruling that the facts did not demonstrate the formation of an enforceable request for and acceptance of a mandate under Louisiana law.
3. The district court legally erred and was manifestly erroneous in refusing to grant a directed verdict on Ms. Dellinger’s motion made at the conclusion of her case, and renewed at the conclusion of the trial.
4. The district court commit legal error and was clearly wrong in failing to award Dellinger her legal fees made necessary by the actions of Mr. Van *838 Hoorebeeke in refusing to permit her to complete the accounting for the mandate.

DISCUSSION

A reviewing court may not disturb findings of fact absent manifest error or unless they are clearly wrong, and where there is conflicting testimony, reasonable inferences of fact should not be disturbed upon appellate review. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Likewise, where there are two permissible views of | ¡¡evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.; Neal Auction Co., Inc. v. Lafayette Ins. Co., 2008-0574, p. 4 (La.App. 4 Cir. 4/29/09), 13 So.3d 1135, 1138, reh’g denied, (La.6/5/09), writ denied, 2009-1499 (La.11/6/09), 21 So.3d 313 and unit denied, 2009-1608 La. 11/6/09, 21 So.3d 313.
A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La.Civ.Code Ann. art. 2989. The contract of mandate may serve the exclusive or the common interest of the principal, the man-datary, or a third person. La. Civ.Code Ann. art. 2991. The contract of mandate is not required to be in any particular form. La. Civ.Code Ann. art. 2993. The principal may confer on the mandatary general authority to do whatever is appropriate under the circumstances. La. Civ.Code Ann. art. 2994. The principal is bound to reimburse the mandatary for the expenses and charges he has incurred and to pay him the remuneration to which he is entitled. La. Civ.Code Ann. art. 3012. The principal is bound to compensate the mandatary for loss the mandatary sustains as a result of the mandate, but not for loss caused by the fault of the mandatary. La. Civ.Code Ann. art. 3013. The principal owes interest from the date of the expenditure on sums expended by the mandatary in performance of the mandate. La. Civ.Code Ann. art. 3014. A mandatary who contracts in his own name without disclosing his status as a mandatary binds himself personally for the performance of the contract. La. Civ.Code Ann. art. 3017.
^Furthermore, “it is not necessary for an agent to establish an express agreement that he should have a pecuniary remuneration for his services. Courts may infer such an agreement from the nature of the employment and the relations of the parties.” Waterman v. Gibson, 5 La. Ann. 672, 673 (1850).
In the instant matter, it appears that the arguments of Ms. Dellinger concern nineteen (19) Requests for Admissions that Mr. Van Hoorebeek failed to answer during discovery. “A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Articles 1422 through 1425 set forth in the request or of the truth of any relevant matters of fact, including the genuineness of any documents described in the request....” La.Code Civ. Proc. Ann. art. 1466. La.Code Civ. Proc. Ann. art. 1467, paragraph “A” provides:
Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within fifteen days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of thirty days after service *839 of the petition upon him. The written answer or reasons for objection to each request for admission shall immediately follow a restatement of the request for admission to which the answer or objection is responding. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny only a part of the matter of which an admission is requested, |she shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; he may, subject to the provisions of Article 1472, deny the matter or set forth reasons why he cannot admit or deny it. (Emphasis added)
After presenting the testimony of Paul Nelson and Ms. Dellinger, and just before resting, counsel for Ms. Dellinger sought to introduce Requests for Admissions— which the district court denied on the grounds that all of the facts sought to be determined by the requests for admissions had already been presented through live testimony. The district court observed:
Hold on, Mr. Salley.[2] The purposes of the Request for Admission are to avoid if necessary trial on the merits on any matter admitted. We have already had trial on the merits on each of these issues. I will allow you to proffer that exhibit but I’m not allowing you to try your case by a failed Request for Admissions when the same is not brought up to the court in advance. We’ve already had a trial on the merits. The interest of justice is served by presentation of the witnesses before the Court in then-testimony and answer to the very questions that were asked in the Request for Admissions ...
[plaintiff reserves her rights]
... Absolutely. And that they are admitted, they are actually the same exact answers that this witness has given, or this witness hasn’t yet answered those questions but we’ll consider those at the end of the trial, but a request for admission does not — Article 1468 further says: The court may permit withdrawal or amendment when the presentation of the merits of the action will be sub-served thereby and the party who obtained the admission fails to satisfy the court that withdrawal or |fiamendment will prejudice him in maintaining his action or defense on the merits.
Counsel for Ms. Dellinger then rested. The district court determined that eighteen of the Requests for admissions were established by the trial testimony; the nineteenth (as argued by Mr. Van Hoore-beek) was an attempt to have the ultimate trial issue decided — and the district court declined to rule thereon.
In the district court’s oral reasons for judgment, the court concluded:
In this case it appears that there can be an oral contract of mandate and the question is whether or not there’s an offer and acceptance and the meeting of *840 the minds on the night of November 7th, 2008. The Court finds that there was not; that Mr. Van Hoorebeek did indeed approach Ms. Dellinger about the opportunity to purchase this train ride. Mr. Van Hoorebeek intended it to be a suggestion to be made on behalf of the Krewe of Cork. Ms. Dellinger either misunderstood him or understood something differently than what he intended.
I reach that conclusion by the facts that follow. If Ms. Dellinger had in fact agreed on that evening to commit herself to a $4,000 debt to Mr. Van Hoore-beek, that’s a fairly unreasonable thing for her to do given that he already owed her $6300 if she was committing to him personally to incur another $4,000 debt. That doesn’t make a lot of sense to me just from a common sense standpoint. It does make sense that she thought they could appropriately sell it to the Krewe of Cork and the Krewe of Cork would allow this and get members to do it. That makes much more sense than to incur an additional $4,000 debt on behalf of a man with whom she no longer had a personal relationship who already owed you $6300 and wasn’t paying.
Secondly, on the Monday morning after the event or when the American Express came due in 30 days, there was no demand by Ms. Dellinger to Mr. Van Hoorebeek for payment, which you would think would be reasonable if I ask you to incur $4,000 on a Saturday night to put it on my credit card, that the next day or two days later or at least at the cycle for the credit card you would say “by the way, this is what I paid for you. Could you send me a check.” The emails that were 17submitted by Ms Del-linger do not begin any correspondence until April 28th, 2008 which is six months after the incurring of the debt is the first instance. There can be multiple interpretations of these e-mails. It’s clear to me that Mr. Van Hoorebeek did not intend it for him personally. He intended it for the Krewe of Cork. It was an unfortunate misunderstanding between friends. Unfortunately the Court cannot find it to be an expressed obligation of offer and acceptance between these parties. The plaintiff bears the burden of proof and has failed to meet it in this instance.’
At trial, it was uncontroverted that Ms. Dellinger and Mr. Van Hoorebeek both attended a charity auction (although the circumstances of their meeting at the auction are at issue), where Ms. Dellinger successfully bid $4,000 for the one-time use of restored railroad cars owned by The New Orleans Public Belt Railroad. Ms. Dellinger charged the auction bid to her personal American Express card, which she later paid with personal funds. However, while, Ms. Dellinger claims that she acted exclusively at the direction and instruction of Mr. Van Hoorebeek in making her bid, and that the debt was therefore exclusively his to repay, Mr. Van Hoore-beek described the events differently, noting that they were both active in a Mardi Gras club, and that the idea was to purchase the rail car lot as a fund-raising opportunity for the club. The record reflects, and it was uncontested at trial, that Ms. Dellinger was: (1) an officer with check-signing authority for the Mardi Gras club; (2) she was familiar with the personal financial circumstances of Mr. Van Hoo-rebeek, both before and after the auction; and (3) that she was aware that Mr. Van Hoorebeek already owed her $6,300, on which debt he was paying a small monthly sum intermittently.
|rMs. Dellinger also testified at trial that she administered the retirement account of Mr. Van Hoorebeek, and that she was aware that he had had to withdraw funds *841 previously from that account in order to repay loans to her. And, the testimony of Mr. Van Hoorebeek corroborated the extent to which Ms. Dellinger was familiar both with his personal financial status and that of the Mardi Gras club. Ms. Dellinger knew that neither entity had the money to pay for the bid that she made — and that repayment could only come as a result of a “Krewe of Cork” event sold to the membership. Mr. Van Hoorebeek has never been an officer of the club, and had no access to the Krewe of Cork’s funds.
The record indicates that there was a failure between the parties to agree on what was confected between them, and that it cannot be said that Ms. Dellinger completely understood what was asked of her. However, while Ms. Dellinger argues that Mr. Van Hoorebeek wanted the subject railcar lot for himself, he argues that he suggested that it be purchased to benefit Krewe of Cork. Considering these two points of view, the choice of the district court was not manifestly erroneous nor clearly wrong in its judgment.

DECREE

The judgment of the district court is affirmed.
AFFIRMED

. Judgment was signed August 10, 2010.

. Trial counsel for Ms. Dellinger.